**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **LUCAS HORTON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 3:21-cv-1542** |
| **MULTIPLAN, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MULTIPLAN, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED BRIEF IN SUPPORT

COMES NOW, Defendant MultiPlan, Inc. ("MultiPlan") and, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, files this Motion to Dismiss Plaintiff's Amended Complaint. For the reasons more fully explained in MultiPlan's incorporated brief in support, this case should be dismissed in its entirety.

# TABLE OF CONTENTS

STATEMENT OF THE CASE ................................................................................................1

BACKGROUND ...............................................................................................................1

    I.     THE PARTIES .................................................................................................1

    II.    PLAINTIFF'S ALLEGATIONS ........................................................................2

LAW AND ARGUMENT ...................................................................................................3

    I.     LEGAL STANDARD FOR DISMISSAL UNDER 12(B)(1) AND
          12(B)(6).......................................................................................................3

    II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR
          LACK OF SUBJECT MATTER JURISDICTION ................................................5

          A.     47 U.S.C. § 227(b)(1)(A)(iii) Was Unconstitutional During
                The Relevant Time Period. .....................................................................5

          B.     Plaintiff Lacks Standing To Bring These Claims. ....................................10

    III.   PLAINTIFF HAS FAILED TO STATE A CLAIM UPON
          WHICH RELIEF CAN BE GRANTED ...........................................................15

          A.     Plaintiff Fails To Allege Any Actual Facts Supporting His
                Allegations That The Calls He Received Were Either Made
                By Or On Behalf Of MultiPlan. ...............................................................16

          B.     A Cell Phone Is Not A Residential Telephone Under The
                TCPA ....................................................................................................17

          C.     Plaintiff Has Failed To State A Claim Under Texas Law. ........................20

CONCLUSION .................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................4, 16

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
   140 S. Ct. 2335 (2020)............................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................4

*Cherkaoui v. Santander Consumer USA, Inc.*,
   32 F. Supp. 3d 811 (S.D. Tex. 2014)...................................................20

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
   543 U.S. 157 (2004)............................................................................7

*Cranor v. 5 Star Nutrition, LLC*,
   No. 1-19-CV-908 2019 WL 8331601 (W.D. Tex. Nov. 27, 2019) .......................................11

*Creasy v. Charter Communications, Inc.*,
   489 F. Supp. 3d 499 (E.D. La. 2020)...............................................9, 10

*Cunningham v. Creative Edge Marketing LLC, et al.*,
   2021 WL 2792353 (E.D. Tex. June 16, 2021)........................................20

*Cunningham v. Matrix Fin. Services, LLC*,
   4:19-CV-896, 2021 WL 1226618 (E.D. Tex. Mar. 31, 2021) ......................................3, 5, 8, 9

*Cunningham v. Politi*,
   No. 18-CV-00362, 2019 WL 2517085 (E.D. Tex. Apr. 30, 2019).........................................18

*Cuvillier v. Sullivan*,
   503 F.3d 397 (5th Cir. 2007) ....................................................................4

*FW/PBS, Inc. v. Dallas*,
   493 U.S. 215 (1990)............................................................................3

*Hamlett v. Santander Consumer USA, Inc.*,
   931 F. Supp. 2d 451 (E.D.N.Y. 2013) ...............................................19

*Horton v. Med-Sense Guaranteed Association*,
   3:20-cv-03470-L-BN (N.D. Tex.)..........................................................1, 15

PD.34407238.1

*Horton v. Northcoast Warranty Services, Inc.*,
    3:20-cv-03626-M-BH (N.D. Tex.).......................................................................2, 15

*Horton v. Palmer Administrative Services, Inc.*,
    3:20-cv-03526-X-BN (N.D. Tex.) ......................................................................2, 15

*Horton v. SunPath LTD.*,
    3:20-cv-01884-B-BH (N.D. Tex.) ......................................................................1, 15

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*,
    5:20-CV-38-OC-30PRL, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020)...............10

*Lane v. Halliburton*,
    529 F.3d 548 (5th Cir. 2008) ....................................................................................3

*Leyse v. Bank of Am. Nat'l Ass'n*,
    804 F.3d 316 (3d Cir. 2015)....................................................................................11

*Lindenbaum v. Realgy, LLC*,
    497 F. Supp. 3d 290 (N.D. Ohio 2020)..................................................................10

*Marks v. U.S.*,
    430 U.S. 188 (1977).................................................................................................7

*MCI Commc'ns Servs., Inc. v. 1st United Telecom, Inc.*,
    No. 3:10-CV-2255-B, 2012 WL 12884830 (N.D. Tex. Nov. 15, 2012).................11

*Pak-a-Sak, Inc. v. City of Perryton*,
    451 S.W.3d 133 (Tex. App.—Amarillo 2014, no pet.) ..........................................19

*Papasan v. Allain*,
    478 U.S. 265 (1986).................................................................................................4

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ...................................................................................3

*Russello v. United States*,
    464 U.S. 16 (1983)..................................................................................................19

*Salcedo v. Hanna*,
    936 F.3d 1162 (11th Cir. 2019) .............................................................................11

*Shelton v. Fast Advance Funding, LLC*,
    378 F. Supp. 3d 356 (E.D. Pa. 2019) ....................................................................18

*Shelton v. Target Advance LLC*,
    No. CV-18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) .............................12

PD.34407238.1

*Shields v. Dick*,
  No. 3:20-CV-00018, 2020 WL 5522991 (S.D. Tex. July 9, 2020) ............................3

*Spivey v. Robertson*,
  197 F.3d 772 (5th Cir. 1999) ...................................................................4

*Stiel v. Heritage Numismatic Auctions, Inc.*,
  816 F. App'x. 888 (5th Cir. 2020) ...........................................................5

*Stoops v. Wells Fargo Bank, N.A.*,
  197 F. Supp. 3d 782 (W.D. Pa. 2016).................................................12, 15

*Sullivan v. Leor Energy, LLC*,
  600 F.3d 542 (5th Cir. 2010) ...................................................................4

*Texas v. Cobb*,
  532 U.S. 162 (2001).................................................................................8

*United States v. L.A. Tucker Truck Lines, Inc.*,
  344 U.S. 33 (1952)..................................................................................7

*Waters v. Churchill*,
  511 U.S. 661 (1994)................................................................................8

**Statutes**

47 U.S.C. § 227(b) ......................................................................................5, 17

47 U.S.C. § 227(b)(1)(A)(iii) .................................................................. *passim*

47 U.S.C. § 227(b)(1)(B) ..................................................................5, 17, 18, 19

47 U.S.C. § 227(b)(3) ...................................................................................11

47 U.S.C. § 227(c)(5) ...................................................................................18

TCPA ....................................................................................................... *passim*

Tex. Bus. & Com. Code Ann. § 305.053.........................................................20

Texas Business and Commerce Code § 305 ...................................................20

Texas TCPA.........................................................................................20, 21

**Other Authorities**

47 C.F.R. § 64.1200(d) .................................................................................18

Fed. R. Civ. P. 8(a)(2)...................................................................................4

PD.34407238.1

Fed. R. Civ. P. 11 ...................................................................................................................1

Local Rule 10.1 ......................................................................................................................1

Fed. R. Civ. P. 12(b)(1) .........................................................................................................3

Fed. R. Civ. P. Rule 12(b)(6) ....................................................................................4, 16, 20

PD.34407238.1

## STATEMENT OF THE CASE

Plaintiff Lucas Horton, proceeding *pro se*, filed suit in the Dallas County Justice Court, Precinct 2, Place 1, in and for the County of Dallas Texas, against MultiPlan for alleged unsolicited pre-recorded calls made to his telephone number in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and analogous Texas state law.  (*See* Doc. No. 1, Exhibit C-1)  On July 2, 2021, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, MultiPlan removed the state court action to this Court.  (Doc. 1)  Immediately thereafter, Plaintiff filed his Amended Complaint ("Complaint").[1]  (Doc. 3)  As explained more fully below, this case should be dismissed for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.

## BACKGROUND[2]

### I.  THE PARTIES

Plaintiff Lucas Horton is an individual who resides in Dallas, Texas.  (Doc. 3, ¶ 2)  Plaintiff is the owner and customary user of a cellphone with the number (214) 909-3341.  *See id.* ¶ 17. Plaintiff is also the owner of a business named Valeria Fine Jewelry, LLC.  (*See* Exh. 1)  Plaintiff's cellphone number is published on various websites as the number to call in order to reach Valeria Fine Jewelry.  (*See* Exhs. 3-6)  In addition to running his jewelry business, Plaintiff is also a serial TCPA lawsuit filer.  For example, just in the past calendar year alone, Plaintiff has been involved in four other TCPA lawsuits in the Northern District of Texas.  *See, e.g., Horton v. SunPath LTD.*, 3:20-cv-01884-B-BH (N.D. Tex.); *Horton v. Med-Sense Guaranteed Association*, 3:20-cv-03470-

---

[1] Plaintiff's Amended Complaint fails to comply with both Rule 11 of the Federal Rules of Civil Procedure and Local Rule 10.1 in that it is unsigned by Plaintiff and fails to include his contact information.  Accordingly, immediately following the filing of this Motion to Dismiss, MultiPlan intends on filing a Motion to Strike the Amended Complaint.

[2] MultiPlan assumes the truth of Plaintiff's non-conclusory allegations for purposes of this motion to dismiss only.

L-BN (N.D. Tex.); *Horton v. Palmer Administrative Services, Inc.*, 3:20-cv-03526-X-BN (N.D. Tex.); and *Horton v. Northcoast Warranty Services, Inc.*, 3:20-cv-03626-M-BH (N.D. Tex.).

Defendant MultiPlan is a cost-containment company that contracts with third-party payors, such as insurance companies, employee benefit plans, self-funded insurance plans, health maintenance organizations, and third-party administrators ("TPAs"), to provide health care cost-management solutions, including network, negotiation, claim pricing, and/or payment accuracy services. However, MultiPlan itself is not an insurance company, TPA, or other third-party payor. MultiPlan does not market, sell, sponsor, insure, issue, or administer health benefit plans or programs to or for any consumers.  To be clear, MultiPlan's clients are not individual consumers. Accordingly, MultiPlan does not telemarket to individuals via telephone, electronic mail, fax or any other means.  (Exh. 2; Decl. of Finney, ¶ 6)   Thus, any health insurance being marketed by an individual over the phone is not being offered by MultiPlan or any entity on behalf of MultiPlan.[3] *Id.*

## II.    <u>PLAINTIFF'S ALLEGATIONS</u>

In his Complaint, Plaintiff alleges that he received unwanted and unsolicited telemarketing calls to purchase health insurance from MultiPlan. *See, e.g.,* Doc. 3 ¶¶ 2, 4, 19, 24, 27. Plaintiff allegedly received these calls on his cellphone with the number (214) 909-3341.  *See id.* ¶ 17.  The unwanted calls supposedly originated from telephone numbers, (779) 680-8982, (737) 238-2962, and (925) 239-0571.  *Id.* at ¶ 20.  Notably, Plaintiff never explains in his Complaint the basis for his belief that MultiPlan was somehow behind these alleged calls.  Plaintiff further alleges that he

---

[3] In fact, MultiPlan has an entire section on its website dedicated to explaining this to consumers.  As explained on its website, "MultiPlan is not affiliated with anyone that claims to be selling MultiPlan health plans or insurance policies. The person or organization contacting you was likely misrepresenting themselves as MultiPlan."   *See* https://www.multiplan.us/members/solicitations-faqs/.

PD.34407238.1

never provided his telephone number to MultiPlan and that he never provided any form of express consent prior to receiving the unwanted calls. *See id.* at ¶¶ 19, 24, 25, 26. As a result, Plaintiff alleges that MultiPlan has violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *Id.* at ¶¶ 6, 8, 12, 14, 16, 29. In addition to TCPA violations, Plaintiff also seems to suggest that MultiPlan has violated analogous Texas state law. *Id.* at ¶ 8.

## **LAW AND ARGUMENT**

## I.   **LEGAL STANDARD FOR DISMISSAL UNDER 12(B)(1) AND 12(B)(6)**

MultiPlan moves for dismissal under Rule 12(b)(1) based on the Court's lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A plaintiff has the burden of proving that the court can exercise subject-matter jurisdiction. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). A court will lack subject-matter jurisdiction if a plaintiff lacks standing. *See Shields v. Dick*, No. 3:20-CV-00018, 2020 WL 5522991, at **1, 3 (S.D. Tex. July 9, 2020) ("The issue of standing presents a threshold jurisdictional question in any federal lawsuit.") (internal quotations omitted) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)). A court must consider standing before determining the validity of a claim. *Id.*

If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In deciding a Rule 12(b)(1) motion, the court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).  After a defendant moves for dismissal under 12(b)(1), the plaintiff "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Cunningham v. Matrix*

*Fin. Services, LLC*, 4:19-CV-896, 2021 WL 1226618, at *2 (E.D. Tex. Mar. 31, 2021) (internal quotations omitted) (citing *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020)).

MultiPlan also seeks dismissal under Rule 12(b)(6) based on Plaintiff's failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require that each claim in the complaint include a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The claims must include sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief--including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). In ruling on a Rule 12(b)(6) motion, a court generally accepts as true all well-pleaded facts and views them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). A court is not, however, required to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Moreover, while a court generally limits its review to the face of the pleadings on a Rule 12(b)(6) motion, it can consider certain documents outside of the pleadings. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). For instance, a court may consider documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.* Additionally, a court may consider items subject to judicial notice, matters

of public record, and items appearing in the record of the case. *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x. 888, 892 (5th Cir. 2020).

**II.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

The Court lacks subject-matter jurisdiction in this case for three reasons. First, the automated call ban, 47 U.S.C. § 227(b)(1)(A)(iii), was unconstitutional between November 2, 2015 and July 6, 2020—during which time Plaintiff allegedly received the calls. *See Barr v. Am. Ass'n of Political Consultants, Inc*., 140 S. Ct. 2335 (2020) (hereinafter "AAPC"); *Cunningham v. Matrix Fin. Services, LLC*, 4:19-CV-896, 2021 WL 1226618 (E.D. Tex. Mar. 31, 2021). Second, the telephone number allegedly called is used by Plaintiff as a business telephone number that falls outside the TCPA. Third, Plaintiff, as a prolific filer of TCPA lawsuits, is not protected under the TCPA.

**A.    47 U.S.C. § 227(b)(1)(A)(iii) Was Unconstitutional During The Relevant Time Period.**

In his Complaint, Plaintiff asserts a claim against MultiPlan under 47 U.S.C. § 227(b) for unwanted calls allegedly made in August, September, and October of 2019.  (Doc. 3, ¶ 29)  While it's not clear exactly what provision of § 227(b) Plaintiff is referring to, MultiPlan presumes that Plaintiff is attempting to assert a claim under 47 U.S.C. § 227(b)(1)(A)(iii),[4] which states:

> It shall be unlawful . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

---

[4] As discussed in Section III.B below, to the extent that Plaintiff is attempting to assert a claim under 47 U.S.C. § 227(b)(1)(B), that claim should also be dismissed by this Court.

PD.34407238.1

However, due to the dates on which these alleged calls occurred and the Supreme Court's recent *AAPC* decision, the Court lacks subject matter jurisdiction over these claims.

Congress amended the TCPA on November 2, 2015 to include an exemption to the automated call ban for calls to cell phones generated for the purpose of collecting debt owed to or guaranteed by the United States government (the "government-debt exception"). *See AAPC*, 140 S. Ct. at 2344–45. In *AAPC*, plaintiffs challenged the automated call restriction of the TCPA, arguing that "the 2015 government-debt exception unconstitutionally favors debt-collection speech over political and other speech." *Id.* at 2343. The Supreme Court agreed, opining that the automated call restriction, with the government-debt exception, is content based. *Id.* at 2346-47 ("In short, the robocall restriction with the government-debt exception is content-based."). It is significant that *AAPC* did not just hold that the government-debt exception was unconstitutional, but also that the automated call restriction that contained the government-debt exception was unconstitutional. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (referred to by Supreme Court as "robocall restriction"). Nor could it be otherwise. The government-debt exception alone does not abridge speech; it provides an exemption to a speech regulation. It is only the robocall restriction that could be held unconstitutional while it contained the government-debt exemption. As a remedy, the Court ordered the government-debt exception severed from the remainder of the TCPA, thereby rendering all automated calls violative going forward. *AAPC*, 140 S. Ct. at 2346, 2352–54

Significantly, the Supreme Court did not reach a majority opinion regarding the effect on calls that took place before it severed the government-debt exception. MultiPlan acknowledges that, in *AAPC*, Justice Kavanaugh wrote in his opinion (joined by only two other justices in a footnote) a suggestion that there could be retrospective liability for those not covered by the government-debt exception. *Id.* at 2355 n.12. In footnote 12, a plurality of three Justices stated:

"our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id*. at 2355, n.12. To be clear, Part III of the opinion where footnote 12 is found was joined by two other Justices. *Id*. at 2342. Justice Thomas did not join Part III, Justices Gorsuch and Thomas explicitly did not agree on severability, and Justices Breyer, Sotomayor, Ginsburg, and Kagan "concur[ed] in the judgment," not Part III's reasoning. *Id*. at 2342, 2356-57.

However, the footnote is clearly *obiter dictum* of just three Justices and was correctly characterized by Justices Gorsuch and Thomas in their concurring and dissenting opinions as only a non-binding "suggestion." *Id.* at 2363 (Gorsuch, J., concurring in the judgment in part and dissenting in part). Where a U.S. Supreme Court decision is fractured, as in *AAPC*, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. U.S.*, 430 U.S. 188, 193 (1977). Here, both opinions concurring "in the judgment" state only that the government-debt exception is severable; they do not join in agreement with the plurality's broader ruling that such severance is retroactive. *AAPC*, 140 S. Ct. at 2356–57. The narrowest line of reasoning in the majority opinion and the two opinions "concurring in the judgment" in *AAPC* is that the government debt exemption is severable, but not the plurality's broader ruling that such severance is retroactive. *Id.* at 2356-57.

Thus, because footnote 12 is not the opinion of the Court, the *AAPC* Court did not address whether its decision "fixing" the TCPA by severing the unconstitutional provision—applied retroactively. *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952); *Cooper Indus., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Waters v. Churchill*, 511 U.S. 661, 678 (1994) ("cases cannot be read as foreclosing an argument that they never dealt with").

"Constitutional rights are not defined by inferences from opinions which did not address the question at issue." *Texas v. Cobb*, 532 U.S. 162, 169 (2001).

Indeed, as Justice Gorsuch explains in his dissent, if the majority had actually intended its remedy – severing the government-backed debt exception from the general automated call restriction – to apply retroactively while still shielding government-debt collectors for the same conduct during the same period, the Court "would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *AAPC*, 140 S. Ct. at 2366 (Gorsuch, J., dissenting). If the majority of the Justices had intended to work unequal treatment between 2015 and 2020 based on the very same content discrimination, it would have not relegated the issue to a footnote, with no substantive case law citations.

Due the recency of the *AAPC* decision, there is limited case law applying the ruling and interpreting its scope.  However, in *Cunningham v. Matrix Fin. Services, LLC*, 4:19-CV-896, 2021 WL 1226618 (E.D. Tex. Mar. 31, 2021), the Eastern District of Texas fully analyzed *AAPC*.  In *Cunningham*, the plaintiff had allegedly received calls to his cell phone in violation of the TCPA. As a result, the plaintiff asserted claims against multiple defendants under § 227(b)(1)(A)(iii). Pursuant to *AAPC*, several of the defendants moved for dismissal based on a lack of subject matter jurisdiction.  *Id*. at *1.  Specifically, the defendants argued that "in finding the government-debt exception of 47 U.S.C. § 227(b)(1)(A)(iii) unconstitutional, *AAPC* invalidated the statutory provision during the exception's operative time period, thereby stripping federal courts of subject matter jurisdiction over alleged violations of § 227(b)(1)(A)(iii) that occurred from the moment Congress enacted the government-debt exception to the Supreme Court's invalidation of the exception in AAPC."  *Id*. at *3.  Before conducting its analysis, the court noted that "the stakes are high—if Defendants are correct, the Court must dismiss this case."  *Id.*

- 8 -

The *Cunningham* court then conducted a very detailed and thorough analysis of *AAPC* and the parties' arguments with respect thereto.  *Id*. at \*3-11.  Based on its analysis, the court found "the necessary conclusion is that § 227(b)(1)(A)(iii) was unconstitutional from the moment Congress enacted the government-debt exception until the Supreme Court handed down its decision in *AAPC*. In other words, during that stretch of time [between November 2, 2015 and July 6, 2020], § 227(b)(1)(A)(iii) had no legal effect." *Id*. at \*11.  The court recognized the harshness of its conclusion but found that there was no way to avoid it as the § 227(b)(1)(A)(iii) violations that Plaintiff alleged to have occurred were not constitutionally sound—and therefore inoperative. *Id*.  Accordingly, the federal question forming the basis of the Court's subject matter jurisdiction was no longer present, and the Court had to dismiss the case for lack of subject matter jurisdiction.

The same conclusion was reached by another district court within this Circuit in *Creasy v. Charter Communications, Inc.*, 489 F. Supp. 3d 499, 505 (E.D. La. 2020), judgment entered, CV 20-1199, 2020 WL 7646640 (E.D. La. Dec. 23, 2020).  In *Creasy*, the plaintiff alleged that the defendant "violated § 227(b)(1)(A)(iii) at least 130 times by transmitting auto-dialed calls and texts to the plaintiffs without consent to do so." *Id*. at 504.  All but one of these alleged communications occurred within the time period between Congress' enactment of the government debt exception and the *AAPC* opinion.  Accordingly, with respect to the pre-*AAPC* communications, the defendant argued that the court lacked subject-matter jurisdiction "to adjudicate the legality of such communications because federal courts lack authority to enforce violations of unconstitutional laws." *Id*.  On this point, after analyzing *AAPC*, the court agreed with the defendant. *Id*. at 504-08.  In summarizing its finding the court stated:

> The Supreme Court's decision in *AAPC* cannot logically be read as anything other than a ruling that § 227(b)(1)(A)(iii) was unconstitutional in the form in which the Court received it. *That* version of the provision, which included the government-debt exception that the Court has now severed, was unconstitutional when

[defendant] engaged in all but one of the allegedly illegal communications the plaintiffs complain of.

An unconstitutional statute being "as no law," the Court may not enforce the pre-*AAPC* version of § 227(b)(1)(A)(iii) against [defendant] here.

*Id.* at 510-11.  Accordingly, the *Creasy* court dismissed plaintiff's TCPA claims based on violations which allegedly occurred before July 6, 2020 for lack of subject matter jurisdiction.

Likewise, this same conclusion was reached by the courts in *Lindenbaum v. Realgy, LLC*, 497 F. Supp. 3d 290, 298–99 (N.D. Ohio 2020) ("Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter.") and *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 5:20-CV-38-OC-30PRL, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020) ("Because the Court is without authority to enforce an unconstitutional statute, the Court lacks subject matter jurisdiction over this action.").

For these reasons, Plaintiff's TCPA claims against MultiPlan must be dismissed for lack of subject-matter jurisdiction.  The Complaint is clear that the alleged unlawful calls were allegedly made in August, September, and October of 2019.  (Doc. 3, ¶ 29)  At that point in time, 47 U.S.C. § 227(b)(1)(A)(iii) was unconstitutional, and accordingly, this Court is without authority to enforce the claims asserted by Plaintiff in this case.

## B.   Plaintiff Lacks Standing To Bring These Claims.

In addition to 47 U.S.C. § 227(b)(1)(A)(iii) being unconstitutional, and therefore inoperable, during the relevant time period, Plaintiff also lacks Article III standing to assert these claims.  The purpose of the TCPA is "to protect consumers from the nuisance and invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. at 7979-80. "In passing the Act, Congress was animated by 'outrage[] over the proliferation' of prerecorded telemarketing calls to

private residences[.]" *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 325 (3d Cir. 2015) (quoting Telephone Consumer Protection Act of 1991, Pub.L. No. 102–243, § 2(5)-(6), (10), 105 Stat. 2394 (note following 47 U.S.C. § 227)). The legislative history of the Act shows congressmembers' displeasure with calls to private residences that "wake us up in the morning," "interrupt our dinner at night," "force the sick and elderly out of bed," and "hound us until we want to rip the telephone right out of the wall." *Id*. at 326 (citing 137 Cong. Rec. 30, 821-22). This legislative history is instructive.

While the TCPA grants a private cause of action to a "person or entity," not every person who receives an unwanted call has standing. *See* 47 U.S.C. § 227(b)(3). Indeed, "[s]omeone with a generalized interest in punishing telemarketers, for example, would not qualify on that basis alone" as having "suffered the particularized injury required to maintain an action in federal court for a statutory violation." *Leyse*, 804 F.3d at 323. Courts have denied standing to a plaintiff under the TCPA on several occasions. *See, e.g., S*alcedo v. Hanna, 936 F.3d 1162 (11th Cir. 2019) (dismissing TCPA action for lack of standing where plaintiff received a single text message in violation of the Act); *Cranor v. 5 Star Nutrition, LLC*, No. 1-19-CV-908 2019 WL 8331601, at **1, 4 (W.D. Tex. Nov. 27, 2019) (dismissing TCPA action for the same reason); *MCI Commc'ns Servs., Inc. v. 1st United Telecom, Inc.*, No. 3:10-CV-2255-B, 2012 WL 12884830 at **3-4 (N.D. Tex. Nov. 15, 2012) (denying plaintiff Verizon's motion for default judgment because it doubted that telecommunications companies had standing under the TCPA).

More relevant here, courts have rejected plaintiffs' standing when they abuse the TCPA. For example, in *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 800 (W.D. Pa. 2016), a Pennsylvania district court considered whether a serial filer could have standing under the TCPA. The plaintiff in *Stoops* admitted to buying forty cellphones, purposely registering them to an

economically depressed state, and using them for the sole purpose of filing TCPA lawsuits. *Id.* at 798-99. She admitted that she had filed nine TCPA lawsuits and that this was her "business." *Id.* at 798. The court granted the defendant's motion for summary judgment based on a lack of standing because she did not have "the sort of interest in privacy, peace, and quiet that Congress intended to protect." *Id.* at 805. It concluded that it was unfathomable that the plaintiff, who hoped to receive calls for the purpose of collecting statutory damages, was among the consumers Congress considered when enacting the TCPA. *Id.* The court also emphasized that this limitation on standing was necessary so that district courts can timely handle their large litigation volumes and adjudicate cases involving parties who have real losses. *Id.* at 806; *see also Shelton v. Target Advance LLC*, No. CV-18-2070, 2019 WL 1641353, at **1, 5 (E.D. Pa. Apr. 16, 2019) (indicating it would grant defendant's motion for summary judgment if the record had shown that the plaintiff had "the sole purpose of luring . . . telemarketers into calling his [p]hone [n]umber which [he] held out to the world as a business telephone number, so that [he could] bring TCPA actions" against them).

Here, Plaintiff cannot show that he suffered an injury under the TCPA. First, Plaintiff's telephone number was not a consumer's telephone number. To the contrary, it is a telephone line that he uses for business purposes. This telephone number is published on various websites for his business, Valeria Fine Jewelry LLC.[5]

---

[5] *See* Exh. 1; Texas Comptroller's Tax Details for Valeria Fine Jewelry LLC.



(Exh. 3; Jewelry Store Directory Website)

Name: Valeria Custom Jewelry
Street: 4834 Vicksburg St
ZIP Code/City: 75207 Dallas
State: Texas
Phone: (214) 909-3341   Main
Website: https://www.valeriacustomjewelry.com/

(Exh. 4; Cylex Online Business Directory Website)

## Contact information

### Phone numbers
214-909-3341

### Business website
www.valeriacustomjewelry.com/

- 13 -

(Exh. 5; n49 Local Review Network Website)

In fact, when Plaintiff personally represented his business in a lawsuit filed against it entitled *Verragio, LTD v. Valeria Fine Jewelry*, 3:17-cv-02662-G, in the United States District Court for the Northern District of Texas, Dallas Division, he filed into the public record the following contact information for Valeria Fine Jewelry:

Respectfully Submitted,

Lucas Horton, Pro Se
Valeria Fine Jewelry
4834 Vicksburg St.
Dallas, TX 75207
Voice: (214) 909 3341

(Exh. 6; Doc. 13, p. 6 in 3:17-cv-02662-G)

Calls to a business telephone number, such as the one used by Plaintiff, cannot be said to be the calls to "private residences" that Congress expressed outrage over when passing the TCPA. Moreover, when one holds out a telephone number as a business telephone number on the internet, one expects, and even hopes, that the phone will ring. That is the point of listing the telephone number online. Thus, it could hardly be said that receiving calls on a business telephone line is a nuisance. Nor can calls to a business number be deemed an invasion of privacy. One's privacy cannot be invaded by calling a telephone number when, as Plaintiff did here, the person used the telephone number for business purposes and published or allowed others to publish it on the internet and made it available for all to see and dial.

Moreover, Plaintiff is not an innocent victim. Instead, he abuses the TCPA to turn a profit, and as a result, is not a person who Congress sought to protect when enacting the TCPA. As

previously stated, Plaintiff is a serial TCPA lawsuit filer.  For example, just in the past calendar year alone, MultiPlan found four other TCPA lawsuits in the Northern District of Texas that had been filed by Plaintiff against various defendants.  *See, e.g., Horton v. SunPath LTD.*, 3:20-cv-01884-B-BH (N.D. Tex.); *Horton v. Med-Sense Guaranteed Association*, 3:20-cv-03470-L-BN (N.D. Tex.); *Horton v. Palmer Administrative Services, Inc.*, 3:20-cv-03526-X-BN (N.D. Tex.); and *Horton v. Northcoast Warranty Services, Inc.,* 3:20-cv-03626-M-BH (N.D. Tex.). It is no coincidence that Plaintiff's telephone number is easily found.

Like the plaintiff in *Stoops*, Plaintiff in this case strategically made his telephone number easily accessible on the internet to promote his business. The TCPA was intended to prevent *unwanted* calls, not *hoped-for calls*. As someone who hopes for robocalls to make a profit from statutory damages, Plaintiff did not suffer an injury-in-fact. Indeed, his "interests are so marginally related to or inconsistent with the purposes implicit in the [TCPA] that it cannot reasonably be assumed that Congress intended to permit the suit." *Stoops*, 197 F. Supp. 3d at 805 (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399) (internal quotations omitted). Because the telephone number allegedly called is used for business purposes and to lure phone calls, Plaintiff cannot satisfy the injury-in-fact requirement to prove standing. Absent Plaintiff's standing, the Court lacks subject-matter jurisdiction over Plaintiff's TCPA claims.

## III.   PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In addition to the Court's lack of subject matter jurisdiction, Plaintiff's Complaint should also be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

PD.34407238.1

A.   **Plaintiff Fails To Allege Any Actual Facts Supporting His Allegations That The Calls He Received Were Either Made By Or On Behalf Of MultiPlan.**

In his Complaint, Plaintiff alleges that the calls he received supposedly originated from the telephone numbers, (779) 680-8982, (737) 238-2962, and (925) 239-0571.   (Doc. 3, ¶ 20) Allegedly, these calls were made by MultiPlan or on MultiPlan's behalf.   Plaintiff fails though to plead any factual content that would allow the Court to draw the reasonable inference that MultiPlan made any of these calls.   *See Iqbal*, 556 U.S. at 678.   Moreover, Plaintiff fails to provide any factual allegations that explain how or why he thinks it was MultiPlan behind the alleged calls. Plaintiff's assertions on who made the alleged calls at issue are simply unsupported conclusions. Without any actual factual allegations supporting Plaintiff's conclusory assertion that it was MultiPlan who made the calls at issue, no TCPA claim should stand against it.

Moreover, the "facts" that Plaintiff alleges actually evidence that the calls were not made by MultiPlan or on MultiPlan's behalf.   The allegations in the Complaint make it clear that the alleged calls were made in an apparent attempt to solicit the purchase of a health insurance plan. (*See* Doc. 3, ¶¶ 20 and 23)   However, MultiPlan is not an insurance company and it does not sell or broker health insurance policies to consumers.   (Exh. 2; Decl. of Finney, ¶ 6)   MultiPlan is also not affiliated with anyone that claims to be selling MultiPlan health plans or insurance policies. Accordingly, MultiPlan does not telemarket to individual consumers via telephone, electronic mail, fax or any other means.   *Id.*

Out of an abundance of caution, MultiPlan conducted a search of its telecommunications platforms for the time period of August 1, 2019 through and including October 31, 2019, and found that no calls were made to (214) 909-3341 from MultiPlan or any MultiPlan business.   *Id.* at ¶ 9. Furthermore, the numbers (779) 680-8982, (737) 238-2962, and (925) 239-0571 are not phone numbers owned or leased by MultiPlan or utilized by or on behalf of any MultiPlan business.   *Id.*

- 16 -

at ¶ 10.  Consequently, MultiPlan can confidently represent to this Court that the health insurance that was allegedly marketed to Plaintiff, was not being offered by MultiPlan or any entity on behalf of MultiPlan.   Plaintiff has failed to allege any non-conclusory factual content suggesting otherwise.

**B.     A Cell Phone Is Not A Residential Telephone Under The TCPA**

In his Complaint, Plaintiff is clear that the alleged unlawful calls he received were made to his cellphone.  (Doc. 3, ¶ 17)  As a result, Plaintiff has failed to raise a cognizable cause of action under 42 U.S.C. §§  227(b)(1)(B) and (c) because these provisions of the TCPA apply only to residential phone numbers, not cell phone numbers.

Here, Plaintiff raises claims under sections 227(b)(1)(B) and 227(c) of the TCPA.[6]  (*See* Doc. 3, ¶ 29)   However, sections 227(b)(1)(B) and (c) apply only to "residential" telephones. Section 227(b)(1)(B) makes it "unlawful for any person . . . to initiate any telephone call to any *residential* telephone line using an artificial or prerecorded voice[.]" 47 U.S.C. § 227(b)(1)(B) (emphasis added). Similarly, section 227(c) provides authority to the Federal Communications Commission ("FCC") to promulgate regulations regarding telephone communications to *residential* telephone subscribers. *See id.* § 227(c)(1) ("[T]he Commission shall initiate a rulemaking proceeding concerning the need to protect *residential* telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.") (emphasis added). To that end, the FCC enacted regulations requiring callers of "*residential* telephone subscribers" to have "procedures for maintaining a list of persons who request not to receive telemarketing calls[.]" *See*

---

[6] As previously noted, Plaintiff's Complaint is unclear as to what specific provision of § 227(b) that he is asserting his TCPA claim under.  If he is asserting a claim under § 227(b)(1)(A)(iii) his claim should be dismissed for lack of subject matter-jurisdiction. *See supra* Section II.A.  If he is asserting a claim under § 227(b)(1)(B), as this Section of MultiPlan's brief presumes, his claim should be dismissed for failure to state a claim.

- 17 -

47 C.F.R. § 64.1200(d) (emphasis added). These procedures require telemarketers to have a written policy for maintaining a do-not-call list, train personnel on the use of the do-not-call list, and have their personnel identify themselves. *Id.* § 64.1200(d)(1)-(7). A person who receives a call in violation of these regulations has a private cause of action under section 227(c)(5) of the TCPA. *See* 47 U.S.C. § 227(c)(5).

Sections 227(b)(1)(B) and 227(c) pertain to calls made to "residential" telephones—not cellphones. *See Cunningham v. Politi*, No. 18-CV-00362, 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019) (citing recent court decisions determining that "residential telephone" under section 227(c) does not encompass cellphones and highlighting that the current plaintiff alleged "only the use of his cellular phones"); *see also Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 365 n.7 (E.D. Pa. 2019) ("[T]his Court questions whether cellular telephone subscribers were intended to be included in the definition of residential telephone subscriber . . . [T]he plain language of residential telephone describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere.") (internal quotation marks omitted).

While the TCPA does not define "residential" telephones, the plain meaning of the word supports an interpretation that excludes cellphones. "[T]he common meaning of the term 'residential' describes a location at which people live. Indeed, it has been defined as a location 'containing mostly homes instead of stores [or] businesses,' 'used as a place to live,' or 'of or relating to the places where people live.'" *Pak-a-Sak, Inc. v. City of Perryton*, 451 S.W.3d 133, 138 (Tex. App.—Amarillo 2014, no pet.) (citing MERRIAM-WEBSTER DICTIONARY, http://merriam-webster.com (last visited Nov. 6, 2014)). Because cellphones can be used inside and outside a residence, they do not constitute residential telephones as contemplated under the TCPA.

PD.34407238.1

Moreover, throughout the TCPA, the Act specifically enumerates sections that pertain to residential phones and sections that pertain to cellphones. *See* 47 U.S.C. §§ 227(b)(1)(A)(iii) (prohibiting robocalls "to any telephone number assigned to a . . . cellular telephone service"); *id.* § 227(b)(1)(B) (prohibiting robocalls "to any residential telephone line"); *id.* § 227(b)(2)(C) (referring to "a telephone number assigned to a cellular telephone service"); *id.* § 227(c) (permitting the FCC to create regulations for calls to "residential telephone subscribers") (emphasis added). The TCPA does not use these terms interchangeably. *See Hamlett v. Santander Consumer USA, Inc.*, 931 F. Supp. 2d 451, 456-57 (E.D.N.Y. 2013) (holding that an exemption under the TCPA that applies to "residential, landline telephones" does not apply to cellphones). Thus, if Congress sought to include cellphones in sections 227(b)(1)(B) and 227(c), it would have done so. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). In light of this omission, it is clear that Congress did not intend residential telephones to encompass cell phones.

Here, Plaintiff admits that the alleged phone calls were made to his cellphone.  (Doc. 3, ¶ 17)  Based on this admission, the alleged calls were not made to a residential telephone line in violation of sections 227(b)(1)(B) and 227(c) of the TCPA. Therefore, even taking all allegations in the Complaint as true, Plaintiff failed to plead a cognizable claim under sections 227(b)(1)(B) and 227(c) of the TCPA.

However, even if the Court determines that residential telephones encompass cellphones under the TCPA, the term cannot be said to reach so far so as to include business telephones. As previously mentioned, Plaintiff uses this telephone number for commercial purposes. Thus, the

- 19 -

alleged calls to Plaintiff's non-residential telephone number are not covered by sections 227(b)(1)(B) and 227(c). Accordingly, the Court should dismiss these claims for failure to state a claim under Rule 12(b)(6).

### C.      Plaintiff Has Failed To State A Claim Under Texas Law.

Although its not entirely clear from the Complaint, Plaintiff appears to also be asserting a claim against MultiPlan under Texas Business and Commerce Code § 305 ("Texas TCPA").  (Doc. 3, ¶ 8)   Under the Texas TCPA, "[a] person who receives a communication that violates [the federal TCPA] . . . may bring an action in this state against the person who originates the communication."  Tex. Bus. & Com. Code Ann. § 305.053.  Accordingly, "[t]he Texas TCPA proscribes only that conduct which is also prohibited by the TCPA. If no violation of the TCPA exists, there is no violation of the Texas TCPA."  *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014); *see also Cunningham v. Creative Edge Marketing LLC, et al.*, 2021 WL 2792353, at *6 (E.D. Tex. June 16, 2021) ("Because Plaintiff has not demonstrated a violation of 47 U.S.C. § 227—the sole basis upon which he asserts a claim under the Texas Business and Commerce Code—Plaintiff has not provided a sufficient basis to proceed on his claim under the Texas Business and Commerce Code.").  As discussed above, Plaintiff has failed to state a claim under the federal TCPA.  Accordingly, Plaintiff has also failed to state a claim under the Texas TCPA and his state law claim should also be dismissed.

### CONCLUSION

Accordingly, for these reasons, Defendant MultiPlan, Inc. respectfully requests the Court to grant its Motion to Dismiss Plaintiff's Amended Complaint, dismiss all of Plaintiff's causes of actions as alleged herein, and award MultiPlan such other and further relief to which is may be justly entitled.

Dated: July 9, 2021.

Respectfully submitted,

*/s/ Jennifer K. Clewis*
Jennifer K. Clewis
State Bar No. 24097509
**PHELPS DUNBAR LLP**
Southlake Town Square
115 Grand Avenue, Suite 222
Southlake, Texas  76092-7629
Telephone: (817) 305-0342
Facsimile: (817) 488-3214
jennifer.clewis@phelps.com

**ATTORNEY FOR MULTIPLAN, INC.**

**OF COUNSEL:**

Errol J. King, Jr.
Taylor J. Crousillac
Katherine Cicardo Mannino
**PHELPS DUNBAR LLP**
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: (225) 346-0285
Facsimile: (225) 381-9197
errol.king@phelps.com
taylor.crousillac@phelps.com
katie.mannino@phelps.com

**ATTORNEYS FOR MULTIPLAN, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of July 2021, I electronically filed the enclosed Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support and attached exhibits, and this Certificate of Service, through the Court's CM/ECF filing system, and one copy of same was served upon Plaintiff via e-mail.

*/s/ Jennifer K. Clewis*
Jennifer K. Clewis

- 21 -